LUKE, Ex'r, v. PATTERSON, Ex'x.

No. 30889. June 15, 1943.

*139 P. 2d 175.*

Wm. T. Powell, of Walters, and J. G. Clift, of Duncan, for plaintiff in error.

Floyd L. Jackson, of Walters, and E. L. Richardson, of Lawton, for defendants in error.

GIBSON, V. C. J. This is an action to recover money due on a written contract and to foreclose a real estate mortgage given to secure the indebtedness. The trial court rendered a money judgment for plaintiff, but denied foreclosure of the mortgage, and disallowed attorney fees, and plaintiff appeals. Defendants have filed their cross-appeal charging error in the failure of the court to allow credit for a certain alleged payment on the indebtedness.

This controversy has grown out of a series of transactions between the respective testators of the parties hereto in the nature of promissory notes, real estate mortgages, lawsuits, and written agreements adjusting the rights of the parties in connection with the sale of certain real property.

The petition alleges in substance that on March 1, 1935, A. R. Patterson and Beulah A. Patterson, husband and wife, executed and delivered to J. A. Wollam,

632

plaintiff's testator, their certain promissory notes evidencing an indebtedness then due Wollam in the sum of $15,-773.58, and wherein they agreed to pay Wollam said sum in certain installments, the last to fall due November 15, 1939, and to bear interest at 7 per cent. That at the same time, etc., and for the purpose of securing the payment of said indebtedness, the Pattersons executed and delivered to Wollam their certain real estate mortgage covering the premises here involved.

It is further alleged that on March 2, 1938, the mortgagors, having paid a specified number of the installments aforesaid, executed and delivered to the mortgagee an extension agreement in writing wherein it was agreed between the parties that the mortgagors would pay to the mortgagee the balance then due in annual installments of $2,000 to commence November 1, 1939, and to continue until the balance should be paid.

The action is based upon the mortgage of March 1, 1935, and the extension agreement of March 2, 1938. The alleged default on the part of defendants was their failure to pay the taxes for the years 1937 and 1938.

Plaintiff sought judgment for the balance due under the contract and for foreclosure of the mortgage, and for attorney fees in the amount of 10 per cent.

The answer did not deny the indebtedness. The transactions between the parties were set out at length, commencing with the sale of the property by Wollam to the Pattersons in 1926, when certain notes, and a mortgage to secure the same, were given for the purchase price. The mortgage indebtedness came due and was foreclosed by judgment against the Pattersons in a specified sum; that the matter was adjusted between the parties by the contract of March 1, 1935, whereby Wollam agreed to withhold execution on the judgment in consideration of the judgment debtors' agreement to pay the amount thereof in specified annual installments; that

the mortgage here sued on and executed in connection with said contract was executed for the sole and only purpose of preventing a subsequent judgment against the Pattersons from becoming a lien upon the property to the impairment of the lien of said judgment; that said mortgage was delivered to Wollam's attorney with the understanding that it might be filed for record in event Wollam should at any time feel that the lien of his judgment might become endangered.

It was further alleged that by reason of the aforesaid conditions and circumstances the mortgage was not subject to foreclosure, but, if there had been a violation of its terms or of the terms of the contract, plaintiff's only available remedy was the enforcement of the judgment by execution and order of sale as by law provided, and as set out in the contract.

It was further alleged that Wollam by accepting the payment of the annual installment due March 1, 1938, waived any breach of the contract occurring by reason of defendants' failure to pay taxes for 1937. A like allegation is made with reference to the taxes of 1938. Defendants charge that the plaintiff by accepting payment of the installments of March 1, 1938, and 1939, is estopped to declare a breach of the contract for failure to pay the taxes.

Defendants further alleged that tender was made of the full amount sued for, except the attorney fees and costs. The tender was made subsequent to the commencement of the action; and tender is made of like amount in the answer.

The answer further alleges that the action was commenced notwithstanding defendants had promised to pay the indebtedness, and that in view of the fact that the delinquent taxes had been paid and tender made of the balance due on the contract, the attorney fee claimed was excessive and unconscionable if, in fact, any fee at all was recoverable, which defendants denied.

This case was here on a former oc-

casion by appeal from an order of the court dismissing plaintiff's action for want of equities. The order was reversed 'and the cause remanded for further proceedings (Luke v. Patterson, 189 Okla. 31, 113 P. 2d 365).

At some point in the course of the proceedings subsequent to mandate on the former appeal, an issue arose concerning an alleged credit of $1,992.59 on the original foreclosure judgment. This credit appeared on the judgment docket under a date prior to the contract of March 2, 1938, here sued on, and defendants allege that this credit was omitted by mistake when the latter contract was entered into. They sought credit therefor.

This latter issue was the sole question submitted to the jury. In answer to a special interrogatory, the jury found that the defendants had made the payment representing the credit on the judgment docket, in addition to all payments admitted by plaintiff.

The trial court sustained plaintiff's motion for judgment notwithstanding the verdict, and rendered judgment for the amount sued for but denied recovery of attorney fees and costs and denied foreclosure of the mortgage.

Plaintiff appeals from the judgment denying foreclosure and disallowing attorney fees and costs. Defendants appeal from that portion of the judgment disallowing the credit of $1,992.59, charging error in the action of the court in sustaining plaintiff's so-called motion for judgment nothwithstanding the verdict.

In support of their argument that the mortgage is not available to plaintiff, defendants cite certain provisions contained in the contract of March 1, 1935, to the effect that the judgment of foreclosure aforesaid was to remain in full force and effect, to be collected by order of sale upon default of payment of installments, taxes, etc. It is insisted that the mortgage here sued on was delivered conditionally and that the conditions have not transpired to render the mortgage effective. Defendants rely espe-

cially on the following provision of the contract of March 1, 1935:

"It is further agreed by the parties hereto that should there arise any condition, which, in the opinion, of the first party, would impair the priority of said judgment lien by reason of withholding the issuance of execution and order of sale, for more than one year from the date of said judgment, then and in that event parties of the second part shall secure the payment of said judgment by a first mortgage lien upon said hereinabove described property and to that end the said second parties execute, of even date herewith, a mortgage upon said premises, and deliver the same to Walter Hubbell, attorney for first party, the same to be delivered to the first party and placed of record in the event aforesaid."

The mortgage mentioned in that paragraph is the mortgage here involved. It was to secure the judgment, and to be used for that purpose if plaintiff felt insecure under the lien of the judgment.

In the face of a certain statement contained in the answer and in the amended answer, we fail to understand why the mortgage did not become a valid obligation in the hands of the plaintiff. The statement or allegation we have in mind here is one referring to the above-quoted provision of the contract of March 1, 1935, and reads as follows:

"In pursuance to the above provision of said contract the mortgage sought to be foreclosed herein was executed on March 1, 1935, of even date with said contract and delivered to Walter Hubbell, as provided, and thereafter on the 13th day of December, 1935, the said A. R. Patterson became involved with another creditor and threatened with litigation which in the opinion of J. A. Wollam was a condition likely to impair the priority of his said judgment lien by reason of withholding the issuance of execution and order of sale and thereupon the said J. A. Wollam directed the recording of said mortgage, and the same was recorded on the 13th day of December, 1935."

There is nothing in the record to in-

dicate that the plaintiff was not justified in substituting the lien of the mortgage for the lien of the judgment. In fact the contract of 1938 accomplished that very purpose. It refers specifically to the contract of March 1, 1935, and the mortgage, saying that the mortgage was given to secure that contract, and continues with the following provision:

"Whereas, it is desired that the time of payment of said note and contract and mortgage be extended beyond the date fixed therein,

"Now, therefore, for and in consideration of the acknowledgment of said indebtedness by the said A. R. Patterson and Beulah A. Patterson, and of the extension of the time of payment thereof, it is hereby agreed by the parties hereto that the balance due on said indebtedness, as evidenced by said note and mortgage, be paid at the time and in the manner as follows, to wit . . ."

Then follow the installments to be met by the Pattersons. The contract clearly acknowledged the mortgage as the existing security, and omits any reference to the judgment. From this particular standpoint, the validity of the contract seems not to be questioned.

The mortgage was therefore in full force and effect. It placed upon the Pattersons the obligation to pay all taxes when due, and contained the usual acceleration clause authorizing the mortgagee to declare the entire indebtedness due, without notice, on failure of the mortgagors to pay any installment or taxes when due. Such clauses are valid and may be relied on. Wheeler v. American Inv. Co., 167 Okla. 558, 31 P. 2d 117.

The mortgage also provided that in event action is brought to foreclose the same a reasonable attorney's fee of not less than 10 per cent of the amount due be added, which shall be secured by the mortgage.

Two years' taxes were delinquent when the action was commenced. That was sufficient to place the acceleration clause in operation and to support the action for the full amount unpaid.

Defendants say the mortgagee waived the breach of nonpayment of taxes by accepting payment of the installments after the taxes were due. But we find nothing in the record to indicate acquiescence by the mortgagee in the breach. Acceptance of the installments would not amount to acquiescence; that alone would not waive the default in payment of taxes. The mortgagee's right to exercise the option to treat the entire obligation due exists as long as the default continues. Damet v. Aetna Life Ins. Co., 72 Okla. 122, 179 P. 760. Ordinarily, the payment of delinquent taxes by the mortgagor will bar the mortgagee's right to exercise his option for acceleration (36 Am. Jur. 889 § 403; Fleming v. Franing, 22 Okla. 644, 98 P. 961); and the payment of past-due interest or installments will usually bar such right with respect to those particular delinquencies. 36 Am. Jur. 888, § 402. But, if the option has already been exercised for nonpayment of taxes, as was the case here, subsequent payment thereof will not bar the action or work an abatement thereof.

Unconditional acceptance of past-due installments or interest may constitute a waiver of the right to exercise the option under the acceleration clause of the mortgage as to those particular items, but the unconditional acceptance of installments alone will not constitute a waiver of that right with respect to nonpayment of delinquent taxes. The courts in general hold that the mortgagee's right under such clauses to declare the whole debt due for failure to pay taxes matures as soon as the taxes become delinquent, and a foreclosure action therafter instituted for such failure is not commenced prematurely. 31 A. L. R. 731, anno.

Defendants' argument that the acceptance of the installments constituted a waiver of the failure to pay the taxes then due is based on the purported rule that a promise is held to have dispensed with full performance of a contract where, with knowledge that the condition is not being fully performed, he treats the contract as continuing, and

takes the benefit of a part performance. Woodard v. Speck, 117 Okla. 27, 245 P. 630. There, the vendor in a contract of sale of real property commenced an action to forfeit the contract, and all prior payments as liquidated damages, relying on a clause which provided for surrender of the premises by the vendee and forfeiture of all prior payments in event of default in payment of any of the installment notes given for the purchase price. The facts disclosed that the vendor had acquiesced in a plan of payment other than that provided in the contract. The court held that by so doing the vendor had waived the right to enforce the forfeiture for nonpayment of the sums as provided in the contract, or had acquiesced in the alleged breach, and therefore could not enforce the forfeiture. It is there said by the court that the action was commenced without notice to the vendee that the vendor expected fulfillment of the strict terms of the contract. Although the plan of payment had been altered by acquiescence, there is the intimation in that case that the vendor by giving notice to the vendee could have required resumption of payments as provided in the contract and, upon default, could have enforced the forfeiture.

Here, the obligation as provided in the written contract was in no way altered by acceptance of the full installments and not requiring payment of the taxes then delinquent. Those obligations were separate and distinct items. The acceptance of payment of the one would not alter the obligation to pay the other. Nor would the plan of performance be thereby changed.

Acceleration clauses such as the present one are legal and valid. They are not objectionable as being in the nature of a penalty or forfeiture. Damet v. Aetna Life Ins. Co., supra. Therefore, the rights arising thereunder should not be considered as waived in the absence of competent evidence of an intention to waive.

In the instant case we find nothing to indicate an intention to waive the right to accelerate the indebtedness for failure to pay the taxes. The right of action accrued without notice to the mortgagors when the taxes became delinquent. Therefore, the action was not commenced prematurely. This being true, the defendants were liable for the indebtedness yet unpaid, the attorney's fee as provided in the mortgage, and costs.

The trial court therefore erred in refusing to decree foreclosure of the mortgage.

On cross-appeal defendants take exception to the court's action in sustaining plaintiff's motion for judgment notwithstanding the verdict on the item of credit of $1,992.59 on the judgment.

Defendants say that in no event may a judgment notwithstanding the verdict be rendered unless the party in whose favor it is entered would be entitled to judgment on the pleadings, or unless special findings of the jury are contrary to the general verdict. Martin v. National Bank of Claremore, 182 Okla. 217, 77 2d 40.

But the rule does not apply here. This action is essentially equitable in nature, as is any foreclosure case. Ordinarily, such actions are also for the recovery of money and are for that reason made triable to a jury as a matter of right. 12 O. S. 1941 § 556; Philbrick v. Puritan Corporation, 178 Okla. 489, 63 P. 2d 38. But where the amount of the indebtedness is not in issue, or where defendant admits execution of the note and mortgage, and by his answer or cross-complaint involving the application of equitable doctrines seeks affirmative relief that only a court of equity can give, the action is not triable to a jury as a matter of right, but remains purely equitable. Moore v. Stanton, 77 Okla. 41, 186 P. 466. The rule is there stated as follows:

"Where, in an action on a promissory note and to foreclose a mortgage executed to secure payment of same, defendant admits execution of the note and mortgage and by cross-complaint sets up a defense involving the application of equitable doctrines, and seeks

affirmative relief that only a court of equity can give, such defendant is not entitled to a jury trial."

Here, the only issue as to the amount of the indebtedness was raised by the amended answer wherein it was charged that the credit appearing on the judgment docket was, by mutual mistake, omitted from the settlement evidenced by the contract of March 2, 1938. That contract was intended as complete settlement of the amount then due, and to embody the entire agreement of the parties relative to all credits on the indebtedness. To allow credit for that item would necessitate reformation of the written agreement, and only a court of equity can grant such relief. Ambrose v. Province, 150 Okla. 120, 300 P. 758.

The action was therefore of purely equitable cognizance. In such case the verdict of the jury is advisory only, and it is the duty of the court to make its own findings on the issues of fact. Reynolds v. Conner, 190 Okla. 323, 123 P. 2d 664. In such case the trial court may disregard the verdict and make its own findings. On appeal, if the decision of the court is not against the clear weight of the evidence, the judgment will stand. Id.

The fact that the trial court sustained the motion for judgment notwithstanding the jury's finding on the issue is of no material consequence. The result was that the court merely disregarded the verdict or special finding and made its own finding on the issue, as it was entitled to do.

We have examined the record and find that the court's determination of that issue is not against the clear weight of the evidence. There was no satisfactory showing that the credit in question was not taken into consideration and allowed when the contract of March 2, 1938, was executed.

While the trial court correctly decided the issue of fact relating to the credit, it erred in holding that the plaintiff, by accepting the installments, had waived his right to accelerate the indebtedness for failure of defendants to pay the taxes. The law was erroneously applied to that issue.

In an equity case this court may reverse a judgment which is clearly against the weight of the evidence, or is contrary to the law therein applicable, and render or cause to be rendered such judgment as the trial court should have rendered in the first instance. Richard v. Richard, 172 Okla. 397, 45 P. 2d 101. The rule is there stated as follows:

"In a case of equitable cognizance, where the judgment of the trial court is clearly against the weight of the evidence or contrary to the law applicable thereto, this court will reverse such judgment or decree, or render or cause to be rendered such judgment and decree as the trial court should have rendered."

The judgment is therefore reversed and the cause remanded, with directions to render judgment for plaintiff for the amount claimed in his petition, with interest, attorney's fee, and costs as therein prayed, and for foreclosure of the mortgage described in the petition to satisfy said judgment, and for such other relief as in equity he may be entitled.

CORN, C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.