**FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Corporation,** Plaintiff in Error,

v.

**J. W. WALTER and Essie B. Walter,** Defendants in Error.

No. 39121.

Supreme Court of Oklahoma.

June 27, 1961.

Carmon C. Harris, Oklahoma City, for plaintiff in error.

John C. Moran, Oklahoma City, for defendants in error.

DAVISON, Justice.

This is an appeal by Federal National Mortgage Association, plaintiff in the lower court, from a judgment for J. W. Walter and Essie B. Walter, defendants, denying foreclosure of plaintiff's real estate mortgage. The parties will be referred to as they appeared in the lower court.

The record reflects that one Thomas Miles, Jr., the then owner of the property, did on May 7, 1954, execute his note and G. I. mortgage on the subject property and they were then assigned to the plaintiff. Plaintiff's offices are in Dallas, Texas. The original mortgagee (in Oklahoma City) continued to service the note and mortgage, including collection of the monthly payments, on behalf of the plaintiff. The note is copied verbatim in the mortgage. Principal and interest are amortized in monthly payments of $41.32 due on the first day of each month over a period of 30 years. The mortgage required additional monthly payments of amounts sufficient to pay the taxes and the insurance premiums on the property when due. The monthly payment during the period in controversy totaled $48. Defendants acquired title by warranty deed dated November 9, 1954. Conveyance was made subject to the above mortgage.

Plaintiff instituted its foreclosure action on January 6, 1959, alleging that defendants had failed to make the August 1, 1958, and

subsequent monthly payments, and that under the terms of the mortgage the balance had become due and that plaintiff was entitled to foreclosure of the mortgage. No personal judgment was asked against defendants. Defendants filed a verified answer generally denying the allegations of the petition and further pleading that they had always been prompt with all of their payments; that about August 1, 1958, defendant was out of work and did in September forward two payments in accordance with the custom and practice of the servicer of the mortgage and requirements of "F. H. A." loans and that subsequent tenders were made, all of which had been refused.

The application of defendants for a jury trial was denied and the matter was heard by the court. Final judgment was rendered November 6, 1959. The judgment entered on trial, and at time of hearing plaintiff's motion for new trial, establishes the mortgage as a valid lien upon the real estate and otherwise was for the defendants for the reason that plaintiff had permitted defendants to make late payments a majority of times and on two occasions had allowed defendants to reinstate the mortgage after it had been accelerated because of late payments. The court found defendants tendered the August and September, 1958, payments on September 29, 1958. The judgment was conditioned that defendants immediately pay all installments to date. The defendants were assessed $100 attorney fee and one-half of the costs and abstract bill, totaling $129.50 to be paid March 1, 1960. However, there is language in the adjudging and decreeing portion of the journal entry providing that if the payments are not made within 10 days, then the cause will be continued to March 1, 1960, for final determination.

Plaintiff's contentions are in effect that the record reflects that the judgment is contrary to law.

The trial court found that defendants paid their installments late a majority of the times that they were due. In making such finding the court relied upon the evidence of plaintiff that of the 44 payments made the defendant paid 31 late charges. The installments were due on the first day of each month and past due thereafter. Under the express provisions of the mortgage a "late charge" of 4% of the installment was authorized if not paid within 15 days from the due date. The parties do not argue or present authority as to whether such a delinquency would support foreclosure. The finding and the record do refute the allegation in defendants' answer that they have always been prompt with all of their payments. Furthermore, such circumstances reflect adversely upon defendants invoking the court's equity powers in their behalf.

The note (also copied in mortgage) provides that if any deficiency in the payment of any installment is not made good prior to the due date of the next installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of the note and that failure to exercise the option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. The mortgage contains similar language and further that waiver of exercise of right to mature the whole debt shall not affect the mortgage or rights of holder. It is under these provisions and applicable law that plaintiff filed its foreclosure and now contends it was entitled to proceed with its suit.

It is admitted that the August and September, 1958, installments were not paid. The trial court found these installments were tendered to the servicing company on September 29, 1958. They were returned to defendants. Thereafter defendants bought monthly money orders payable to servicer. All those tendered were refused by plaintiff. From our examination of the record it appears plaintiff exercised its option to accelerate the loan on or before September 26, 1958. The defendants deny receiving notice thereof but the record refutes such denial. Under our view of the law it is immaterial, under the circumstances, whether defendants received notice.

In Luke v. Patterson, 192 Okl. 631, 139 P.2d 175, 148 A.L.R. 679, this court held that an acceleration clause authorizing the mortgagee to declare the entire indebtedness due, without notice, on failure of the mortgagors to pay an installment or taxes when due was legal and valid and may be relied on. Therein we also stated that such clauses were not objectionable as being in the nature of a penalty or forfeiture. See also Wheeler v. American Inv. Co., 167 Okl. 558, 31 P.2d 117; Damet v. Aetna Life Ins. Co., 72 Okl. 122, 179 P. 760, 5 A.L.R. 434, and 36 Am.Jur. Mortgages, Sec. 385.

From our examination of the record we are of the opinion that the indulgence previously extended by plaintiff to defendants did not affect the right of plaintiff to enforce the acceleration clauses in the note and mortgage. As shown above no notice of intention to accelerate was required. The fact that a mortgage is not foreclosed on a previous default in payment does not prevent a foreclosure for a subsequent default, since such indulgence cannot affect a right not yet accrued. Jacobson v. McClanahan, 43 Wash.2d 751, 264 P.2d 253, 255. See also 36 Am.Jur. Mortgages, Sec. 398, and annotation in 148 A.L.R. at page 697.

Defendants rely on our decisions in Lawton v. Lincoln, 200 Okl. 182, 191 P.2d 926, and Murphy v. Fox, Okl., 278 P.2d 820. These cases are not in point because of the difference in the factual situations in those cases and that presented by the present case. In the Lawton case the alleged default was the furnishing of a $4,500 insurance policy, which was retained by the mortgagee without objection, instead of the stipulated $5,000 policy. In the Murphy case the mortgagee's acts contributed to the default in payment of taxes. As stated in those cases and in such circumstances less favor is shown to the enforcement of the acceleration clause when coupled with a good faith mistake on the part of the mortgagor.

Defendants also point out that in September, 1958, plaintiff had on hand in defendants' escrow account the sum of $82.-64 and urge these funds should have been used to pay the delinquent installments. This contention is without merit. Under the express terms of the mortgage these accumulated funds were held in trust to pay taxes and insurance premiums. In fact the mortgage directed that the aggregate total installment should be applied first to taxes, assessments and insurance premiums. The record shows that the escrow funds were so applied toward payment of $35.77 for taxes on November 4, 1958, and $33.07 for insurance premium on November 5, 1958.

On each occasion when defendants were permitted to reinstate the mortgage and avoid foreclosure, the arrangement and agreement was that defendants would make future payments on time and if not so made then foreclosure would be instituted.

In arriving at our decision herein we must necessarily be mindful of the possible effects flowing from a contrary conclusion. If mortgagees may not rely upon the mortgage provisions presented here then we conceive that such mortgage holders would be loth or slow to be indulgent or lenient with deserving mortgagors. This would result in mortgage foreclosures that otherwise would have been avoided.

In a case of equitable cognizance, where the judgment of the trial court is clearly against the weight of the evidence or contrary to the law applicable thereto, this court will reverse such judgment or decree, or render or cause to be rendered such judgment and decree as the trial court should have rendered. Luke v. Patterson, supra.

The judgment is therefore reversed and the cause remanded with instructions to render judgment for the plaintiff for the amounts claimed in its petition, with interest, attorney's fee and costs as therein prayed, and for foreclosure of the mortgage described in the petition to satisfy said judgment and for such other relief as in equity it may be entitled.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.